PIERCE CAREY *v.* A. B. COURCELLE, et als.

Where sub-contractors deliver defective work to the contractor, who receives it in that condition, and it causes damage to another, they will all be held liable *in solido* for the amount of the damage so caused.

APPEAL from the Sixth District Court of New Orleans, *Howell,* J. *Durant & Hornor* for plaintiff. *Roselius & Philips* for Bennett & Lurges.

*J. L. Tissot and Filleul for Courcelle.*—The defendant, Courcelle, undertook to build a verandah to a house situated on Marais street, between Customhouse and Bienville. He gave the contract for furnishing the iron work to Bennett & Lurges, and the contract for slating to J. B. Brown, who employed the plaintiff as a slater. It is alleged that, on account of a defect in the iron work furnished by Bennet & Lurges, the verandah fell out suddenly from the house to the ground, precipitating with it the plaintiff, injuring him severely. The plaintiff claims $10,000 damages, from Courcelle and Bennett & Lurges, *in solido.*

The case was tried by a jury, who rendered a verdict in favor of plaintiff for $1,000. The defendants have appealed from the judgment of the District court.

1. The relation of master and servant did not exist between Courcelle and Bennett & Lurges and Brown, and he cannot be made liable for the acts of Bennett & Lurges, according to Articles 2296 and 2299, C. C.

Courcelle, Bennett & Lurges and Brown exercised independent employments; they executed different and independent contracts; and, supposing any injury was caused by Bennett & Lurges and their servants, Courcelle is not liable for their acts.

When he who does the injury, either in person or by his servant, exercises an indepedant employment, the party employing him is clearly not liable, as in the instance of a butcher who employs a drover, whose deputy does the mischief by his careless driving, or of a builder who contracts to make certain alterations in a club house, together with the necessary gas-fittings, and who employs a gas-fitter for the latter purpose, under a sub-contract, through the negligence of whom or of whose servants the plaintiff sustains an injury; in these cases the relation of master and servant does not exist between the principal and the person who occasions the injury, and the former is therefore not liable for the misconduct of the latter. Broom's Legal Maxims, No. 672, on the maxim, "Respondeat Superior:" Paley's Agency, p. 296 and notes; Story on Agency, No. 453; *Peyton* v. *Richards,* 11 A. R. 62.

2. If the relation of agent and principal, or servant and master, exists between Courcelle and Bennett & Lurges and their workmen, it also exists between Courcelle and Brown and his workmen, and Courcelle, as master, is not liable to one servant for damages resulting from the negli-

gence of another servant. Art. 2299, C. C., does not apply to such a case.

The principle is that a servant, when he engages to serve a master, undertakes, as between him and his master, to run all the ordinary risks of the service, and this includes the risk of negligence on the part of a fellow-servant, wherever he is acting in discharge of his duty as servant of him who is the common master of both. *Hubgh* v. *N. O. & Carrollton R. R. Co.*, 6 A. R. 497; Paley on Agency, 453 and notes; Kent's Commentaries, vol. 2, p. 296; Story on Agency, 453 and notes; *Howes* v. *Steamboat Red Chief*, 15 A. R. 321.

LABAUVE, J. The plaintiff states, in substance, that the defendants, Courcelle and Bennett & Lurges, are indebted to him *in solido* in the sum of $10,000, for which he prays judgment; that he is a laboring man and a slater by occupation, and was employed in that capacity by Brown, to work on the verandah of a house in this city; that said Courcelle was the undertaker to put up the building for the owner, and that Bennett & Lurges were employed by him, the said Courcelle, to put up the said verandah, which was to be with iron bars projecting from the walls of the house, which iron bars were to be well fastened to the walls; and that said Bennett & Lurges constructed the said verandah so negligently that it was unsafe, and that when he went on top, to slate it, the whole entire work fell out suddenly from the house to the ground, precipitating petitioner with it; that petitioner was shockingly wounded and injured; that his leg was broken in two places, etc.

The defendants answered by a general denial.

The jury having found a verdict for plaintiff, against the defendants *in solido*, for $1,000, the court, being satisfied therewith, refused a new trial and gave judgment accordingly. The defendants appealed.

On the trial below Bennett & Lurges requested the court to charge the jury, "that Bennett & Lurges, being under the supervision and control of A. B. Courcelle, they were bound to follow the instructions given to them by said Courcelle." The court refused to give the charge as requested, and a bill of exceptions was taken to the opinion of the court. We think the court did not err. The charge was calculated to mislead the jury ; the cause of action arose from a quasi-offence, and the subcontractors, Bennett & Lurges, were not justifiable, although under instructions, in doing the work in such a defective manner as to endanger the safety of other workmen that were to follow them in the completion of the verandah; they were responsible for their work.

A. B. Courcelle was the undertaker to put up the building ; he gave the contract for furnishing and putting up the iron work of the verandah to his co-defendants, Bennett & Lurges, and the contract for the slating he gave to T. B. Brown, who engaged the plaintiff as a slater to do the work. The evidence shows that the iron bars of the verandah were not securely fixed on the house; and when the plaintiff, with other workmen, went on the verandah to slate it, the whole work fell out suddenly from the house to the ground, precipitating and injuring the plaintiff. The injury consisted in a comminuted or double fracture of the right thigh bone, besides a fracture of the two bones of inferior portion of the right

leg, also a dislocation and fracture of the left foot, and fracture of the two inferior bones.

The plaintiff avers, in substance, that the said Courcelle, the undertaker, was well advised that the said verandah was unsafe and had been negligently constructed by the said Bennett & Lurges, and that he received the work in its dangerous condition, thereby making himself liable with the others. The testimony shows that Courcelle was present when the bars of iron were fixed to the building, and, in fact, participated in the unsafe manner of fixing the iron bars to the house. *Leon Cariday*, a witness, says : "These iron bars merely went through the wall and extended on the roof, and were only wedged on both sides with wooden wedges, and not attached to any joint at all ; and the front walls of the house extended up higher than the roof of the balcony, by the entire cornice of wall ; and, besides the wooden wedges, there was nothing else to hold the upper iron bars into the walls. I made the observation of the fact to Mr. Courcelle, now in court."

We are of the opinion that Courcelle, having contributed to the insecure manner of putting up the verandah, and having afterwards received the same in its bad and dangerous condition, made it his own work, and became liable with his co-defendants for the injuries sustained by plaintiff. This case comes clearly within the dispositions of Arts. 2294, 2295 of C. C. The case that comes nearer to the one at bar is *Peyton* v. *Richards*, where the facts are thus stated : "John McVitter was the undertaker of the building ; McVitter made a special contract with Newton Richards to put up the iron front in question, of which McVitter furnished the materials ; and Richards made another special contract with William Thompson to do the same work. William Thompson himself performed the work, with the assistance of laborers, hired and paid by himself. Just as the work was completed, the iron work and plates, or intablures, fell to the ground, in consequence, as witness thinks, of not being sufficiently propped with pieces of wood under the horizontal pieces, as is usual and necessary. Thompson himself and another workman fell to the ground with the work. After this accident, which caused the death of plaintiff's slave, Thompson erected the work anew, and only received the stipulated compensation from defendant ($15) after the work was properly done and finished. We are of the opinion that Thompson, by whose fault, negligence or unskilfulness, this accident happened, was not the *servant* or *overseer* of defendant in the performance of this work."

The difference between that case and the one at bar is this: in that case Thompson had not completed and delivered his work to his employer, Newton Richards, and the workmen of Thompson had no right to look to Richards for any damages suffered by them in consequence of the fault or negligence of their employer; but, in the present case, Bennett & Lurges, sub-contractors had completed their work in an unskilful and neglectful manner, and delivered the same in that condition to Courcelle, the undertaker; this work was a part of the contract of Courcelle with the owner of the building; and he, Courcelle, by receiving it in that unsafe and insecure condition, became liable for the damages suffered by plaintiff. The receiving of the work by Courcelle did not relieve Bennett &

Lurges of their responsibility towards those who were to complete the verandah by slating it. We think that the principles settled in the case of *Clement Camp* v. *Church Wardens & Kirwan*, 7 A. 321, support our views expressed herein.

It is therefore adjudged and decreed that the judgment of the District Court be affirmed, with costs.

HOWELL, J., recused.

JONES, J. absent.